No. 39,995

STATE OF KANSAS, *Appellee*, v. HENRY MENDZLEWSKI, also known as HARRY BOYLE, *Appellant*.

(299 P. 2d 598)

Opinion filed June 30, 1956.

*A. B. Fletcher, Jr.,* of Junction City, argued the cause, and *Robert A.*

*Schermerhorn* and *C. L. Hoover,* both of Junction City, were with him on the briefs for the appellant.

*William F. Stahl,* special prosecutor, of Junction City, argued the cause, and *John Anderson, Jr.,* attorney general, *Paul E.. Wilson,* assistant attorney general, and *Phillip L. Harris,* county attorney, were all with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This is an appeal by a defendant who was tried, convicted and sentenced for the crime of murder in the first degree (G. S. 1949, 21-401).

The events leading up to the criminal prosecution in question are undisputed and can be stated briefly.

On January 13, 1954, the defendant Henry Mendzlewski, also known as Harry Boyle, who was forty-five years of age and had been working in Topeka, procured a taxicab at Manhattan and caused the driver of that vehicle to take him to the home of his mother-in-law at 1602 Bradley Street in Junction City where his wife was then living. At approximately 5:10 on the afternoon of the next day (January 14) the police of Junction City were notified by a neighbor of a disturbance at 1602 Bradley Street. Officers went to that point immediately where they found the defendant, sitting on a divan and the body of his wife lying on the floor. Defendant admitted having killed his wife and an investigation disclosed that she had died as the result of multiple fractures of the skull, apparently administered with a blunt instrument, divers stab wounds and numerous gunshot wounds. Defendant was taken into custody immediately and incarcerated in the county jail of Geary County.

Within a short time after his apprehension a complaint was filed against defendant charging him with the unlawful and felonious killing of his wife. Having waived a preliminary examination on such charge he was bound over to the district court of Geary County for trial. Subsequently, and on November 15, 1954, he was brought to trial in that court on an information charging him with murder in the first degree contrary to the provisions of G. S. 1949, 21-401. When arraigned he entered a plea of not guilty by reason of insanity through his counsel. Thereupon all parties announced ready for trial and a jury was duly empaneled and sworn to hear the cause. At the close of the state's evidence defendant moved for a directed verdict on the ground the state in its case in chief had failed to prove any of the elements of murder or manslaughter by reason

of his plea of not guilty because of insanity at the time of the commission of the offense. After argument this motion was overruled. Counsel then adduced defendant's evidence and rested. The court then gave the jury written instructions to which neither party made objection and, after closing arguments, directed it to proceed, in charge of a sworn bailiff, to the jury room to consider its verdict. On November 19, 1954, the day after submission of the cause, the jury returned a verdict finding the defendant guilty of murder in the first degree as charged in the information and, instead of assessing the death penalty as it had a right to do (G. S. 1949, 21-403), fixed his punishment at life imprisonment in the state penitentiary.

Following return of the verdict the defendant filed a motion for a new trial. This motion was argued by attorneys for the respective parties and overruled on November 27, 1954. Thereupon judgment was rendered and sentence imposed by the trial court in accord with the terms of the verdict. Defendant then perfected this appeal wherein the only errors assigned as grounds for reversal of the judgment are that the verdict is contrary to the law and the evidence.

In a preliminary way it can be said at the outset that in this jurisdiction there can be no question but that insanity at the time of the commission of a criminal offense is to be recognized as a defense in a prosecution for its commission and may be asserted at any time during trial. Indeed our statute so declares in clear and unequivocal language. See pertinent provisions of G. S. 1949, 62-1532, which read:

"Whenever during the trial of any person on an indictment or information, evidence is introduced to prove that he or she was insane, an idiot, or imbecile, or person of unsound mind, at the time of the commission of the offense, and such person shall be found to have been at the time of the commission of the offense alleged in such indictment or information, insane, an idiot, an imbecile, or person of unsound mind, and he or she shall be acquitted on that ground, the jury shall so state in the verdict, and the court shall thereupon forthwith commit such person to the state hospital for the dangerous insane for safekeeping and treatment and such person shall be received and cared for at said institution. . . ."

However it does not follow, as appellant suggests, that the mere interposition of such a defense in a criminal prosecution entitles a defendant to an acquittal. Nor does it follow, as is argued, that regardless whether the state, through the medium of nonexpert witnesses, has adduced testimony tending to show the defendant in a

murder case is sane, the accused is entitled to an acquittal simply because he has produced a Clinical Psychologist who has testified such defendant was insane at the time of the commission of the involved offense. Under such circumstances this court has long been committed to the rule (see, e. g., *State v. Eye*, 161 Kan. 69, 166 P. 2d 572; *State v. McBride*, 170 Kan. 377, 381, 226 P. 2d 246; *Fisher v. Fraser*, 171 Kan. 472, 476, 233 P. 2d 1066; *State v. Hockett*, 172 Kan. 1, 5, 238 P. 2d 539), recognized by courts of other jurisdictions (14 Am. Jur., Criminal Law, 799 § 41; 26 Am. Jur., Homicide, 509 § 505; 23 C. J. S., Criminal Law, 624 § 1130) that the question whether a defendant in a criminal action was sane or insane at the time of the commission of the offense with which he stands charged is one to be determined by the jury, under proper instructions from the court, upon the evidence introduced bearing upon such issue. Moreover, and again in line with the general rule (see 22 C. J. S., Criminal Law, 124 § 59; 14 Am. Jur., Criminal Law, 796 § 40), we have held repeatedly that the test for determining liability for commission of such crime is whether he was capable of distinguishing between right and wrong at the time and with respect to the act committed. (See, e. g., *State v. Nixon*, 32 Kan. 205, 4 Pac. 159; *State v. Mowry*, 37 Kan. 369, 15 Pac. 282; *State v. Arnold*, 79 Kan. 533, 100 Pac. 64; *State v. White*, 112 Kan. 83, 209 Pac. 660; *State v. McBride*, supra, p. 381; *Fisher v. Fraser*, supra, p. 476.)

Approaching consideration of specific issues, which we pause to repeat are limited solely to questions whether the verdict was contrary to the law and the evidence, it should be pointed out that since appellant makes no complaint regarding the instructions, and their sufficiency is neither briefed nor argued, we must assume they were correct and properly advised the jury as to the test to be applied in determining the single defense made by the appellant, *i. e.*, whether he was not guilty by reason of his insanity at the time he killed his wife. Thus, since the record presented makes it appear this defense was submitted to the jury under proper instructions and, under our decisions, it cannot be successfully argued that the jury's verdict of guilty *was contrary to law if supported by evidence*, the all decisive issue in this case became obvious: Was the verdict contrary to the evidence?

Nothing would be added to the annals of our reports, neither would it benefit the bench or bar of this state, if we were to here detail and set out at length the evidence of record. Conceding,

that appellant produced a Clinical Psychologist who testified it was his opinion appellant was insane at the moment in question and that all the state's evidence came from the lips of nonexpert witnesses, it suffices to say that we have carefully considered all evidence presented by the record tending to touch upon the question of appellant's sanity and have no difficulty whatsoever in concluding that an analysis of all the testimony given by the state's witnesses discloses sufficient substantial competent evidence to warrant the trial court's action in overruling appellant's motion for a directed verdict and in ultimately submitting the question of appellant's sanity to the jury for decision. Heretofore we have pointed out that the jury resolved that factual issue against the appellant and the trial court definitely indicated it was satisfied with that action by approving the jury's verdict. The inescapable result, based on what has been heretofore stated and held, is that the appellant has failed to establish any sound grounds for disturbance of the judgment and it must be upheld.

The judgment is affirmed.

FATZER, J., not participating.